ISAAC WINGATE *v.* W. S. DAHONEY.

**Advancements—Specific Legacies.**

>    Advancements cannot be charged against specific and unconditional bequests.

**Construction of Will.**

>    While courts in construing a will seek to ascertain the testator's intention, such intention must be found from the language used, and if possible the same effect must be given to every word in the will.

APPEAL FROM FRANKLIN CIRCUIT COURT.

November 15, 1877.

OPINION BY JUDGE COFER:

By the second clause of his will the testator devised his home farm to his widow for life, with remainder to his son, Isaac. By the third clause he gave the proceeds of the Carter place and the Forsee place to his five daughters, "to be divided equally between them, subject, however, to the advancements and limitations hereinafter made and specified." In the fourth clause he stated the advancements made to each of his daughters, and added, "These advances I desire shall be charged to my daughters in the final distribution of my property and effects."

By the fifth clause he gave one moiety of the proceeds of the sale

of the Brown place to his daughter, "Lavina Thompson, and her children, George and Wingate Thompson, or their heirs," and bequeathed the residue to his other daughters, and gave to his daughter, Mrs. Dahoney, and her children, a mortgage he held on property belonging to her husband for $1,800. By the sixth clause he directed his bank and Turnpike stock to be sold, and the proceeds to be equally divided between his daughters "after equalizing them under the item of advances." By the seventh clause he directed the residue of his estate to be equally divided among his children.

In a codicil the testator directed the bequests to his daughters, Lavina Thompson and Martha French, to be placed in the hands of a trustee for their use and benefit, to be invested, if deemed advisable by him. The testator disposed of his whole estate of whatever nature and kind, and the rights of the parties must be determined from the will alone.

The bequest to Mrs. Thompson and her two sons of one moiety of the proceeds of the Brown place, and of the residue to the other four sisters, as well as the bequest of the mortgage debt to Mrs. Dahoney and her children, is specific and without restriction, limitation or condition. And if, for the present, we leave out of view the words "in limitations made and" in the third clause, and the words "in the final distribution of my property and effects" in the fourth clause, there can be no doubt as to the proper construction of the will as between the testator's daughters.

The bequest to Mrs. Thompson and her two boys, and that to Mrs. Dahoney and her children, being specific and unconditional, they could not be compelled to put these bequests into hotchpot, with the advancements enumerated in the fourth clause.

The bequests of the proceeds of the Carter and Forsee places, and of the proceeds of the bank and turnpike stock, are also specific, and, still leaving out of view the words already quoted, it is obvious that the only condition annexed to the bequests of that fund is that they are subject to the advancements enumerated in the fourth clause, that is, that the advancements so enumerated are to be first equalized out of the proceeds of the sale of the two tracts of land and the stocks, and the residue is to be divided equally between the five daughters of the testator. And it would be equally plain that all the estate of whatever kind not specifically disposed of by the will was to be equally divided under the seventh clause among all the testator's children. This is virtually conceded by counsel; but they insist that the words we have so far left out of view require a different

44

construction to be given to the will, because, as they insist, these words show an intention on the part of the testator to make all his daughters equal in the division of his estate.

We recognize the cardinal rules of construction, that the intention of the testator should be sought for and followed, and that same effect must, if possible, be given to every word in the will. But we are not, in following these rules, to neglect the equally important rule that the intention of the testator is to be sought in his language, and not in theory or speculation outside of the will.

The word "advancements" has a well known legal and popular signification, and applies only to gifts made by the ancestor in his lifetime in anticipation of what the person to whom the gift is made is expected to take by inheritance from the donor, and therefore the word "advancements," wherever it appears in the will, must be understood to refer to the gifts made by the testator in his lifetime. The word "advancements" in the third clause cannot therefore refer to bequests in the will, and cannot aid in the effort to compel Mrs. Thompson and Mrs. Dahoney to bring the bequests made to them in the third clause into hotchpot.

If, then, we omit that word from the latter sentence in the third clause of the will, it will read, "to be equally divided between them (the five daughters), subject, however, to the limitations herein made and specified." What do these words mean? One of the counsel contends that the word "limitations" is to be construed as syonymous with the word "provision" or "devises." This would give effect to the word and would produce ultimate equality between the daughters of the testator, at least so far as the proceeds of the Carter and Forsee places would make them equal.

But the word "limitation" is not synonymous with "provisions" or "devises," or with any word of similar import. To give it the meaning contended for would be entirely arbitrary and without the least sanction in the similarity of the meaning of the two words. This we are not at liberty to do. The rule that every word in a will or other instrument must have some effect, if possible, does not authorize the court to give an arbitrary meaning to a word and then to give it effect according to such meaning.

Many words have more than one signification, and when a word of that kind is used the court may and will adopt that one of several significations which will give some effect to the word. But when no recognized meaning of the word will give it effect it must be rejected.

There are no limitations in the will to which the clause quoted can

refer. It is claimed that there is a limitation upon the bequests in the fifth clause. But if that be conceded the clause we are considering cannot refer to it. The bequest to Mrs. Thompson and her sons, and to Mrs. Dahoney and her children, is not a limitation on the bequest in the third clause. If there be any limitation in the fifth clause, about which we express no opinion, it is the giving of an estate for life to Mrs. Thompson and Mrs. Dahoney, with remainder over to the two sons of the former and to the children of the latter. It is a limitation upon these particular bequests, and has no application to the other bequests in other parts of the will.

To say that because there may be limitations in the fifth clause they shall operate to require Mrs. Thompson and Mrs. Dahoney to be charged with these bequests before they can share in the bequests in the third and sixth clauses, is equivalent to holding that the word "limitations" was used in the sense of bequests or provisions, which we have seen cannot be done.

But that the testator did not intend Mrs. Thompson or Mrs. Dahoney to be charged with the bequests in the third clause is further shown by the sixth clause, in which he says the proceeds of the bank and turnpike stock shall be equally divided among all his daughters "after equalizing them under the item of advances," by which he evidently meant the advancements enumerated in the fourth clause of the will. Why require only advancements to be charged against the bequests in the sixth clause, if he intended both advancements and the bequests in the fifth clause to be charged against the bequests in the third clause?

Another very persuasive argument in favor of the conclusion that the testator did not intend the bequests to Mrs. Thompson and Mrs. Dahoney contained in the third clause to be charged to them, is the noticeable fact that he three times, in unequivocal language, directs the advancements to be charged, but nowhere directs the bequests to be charged.

If it had been his intention that they should be charged it is quite improbable that he would have failed to manifest that intention by plain, unmistakable language. It is stated by counsel for the appellants that the proceeds of the sale of the Carter and Forsee places, and the bank and turnpike stock, will be more than sufficient to equalize the advancements; and as the clause of the sixth item of the will directing the advancements to be charged in the final settlement of the estate cannot affect the construction of those parts of the will we have been considering, we need not discuss it.

Then there is no appeal calling in question that part of the judgment which determines the respective rights of Mrs. Thompson and her two sons, and Mrs. Dahoney and her children, as between themselves, and we need express no opinion on that subject.

In all other respects the judgment is *affirmed* on the original and cross-appeal.

*A. J. & D. James, for appellant.*

*Rodmans, Breckinridge & Shelby, A. Duvall, for appellee.*